**Becky MONTGOMERY, Plaintiff,**

v.

**J.R. SIMPLOT COMPANY, a Nevada corporation, Defendant.**

**Civil No. 93–1130–AS.**

United States District Court,
D. Oregon.

Aug. 17, 1994.

Douglas G. Combs, Case & Dusterhoff, Portland, OR, for Plaintiff.

Harry S. Chandler, Christine Kitchel, Stoel Rives Boley Jones & Grey, Portland, OR, David E. Spurling, Boise, ID, for Defendant.

## *ORDER*

ROBERT E. JONES, Judge:

Magistrate Judge Donald C. Ashmanskas filed Findings and Recommendation on June 21, 1994, in the above entitled case. The matter is now before me pursuant to 28

U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any portion of a magistrate judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Plaintiff has timely filed objections. I have, therefore, given *de novo* review of Magistrate Judge Ashmanskas's rulings.

I find no error. Accordingly, I ADOPT Magistrate Judge Ashmanskas's Findings and Recommendation dated June 21, 1994 (# 42), in its entirety. Defendant's motion to strike evidence in opposition to defendant's motion for summary judgment (# 35–1) is GRANTED IN PART and DENIED IN PART. Defendant's motion for summary judgment (# 20–1) is GRANTED. Defendant's motion for oral argument (# ___) is DENIED.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

ASHMANSKAS, Magistrate Judge:

Presently before the court is defendant J.R. Simplot Company's ("Defendant") motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff Becky Montgomery ("Plaintiff") alleges that Defendant violated the provisions of O.R.S. Chapter 659 by discharging her because of her sex and in retaliation for her filing a complaint with the Bureau of Labor and Industries ("BOLI") and discriminating against her on the basis of her sex in the terms, conditions and privileges of her employment. Plaintiff also asserts claims for intentional infliction of emotional distress and wrongful retaliatory termination of her employment. Defendant seeks summary judgment on all of these claims.

### *Background*

The following is a summary of the facts which the parties agree are not in dispute. Plaintiff was hired by Defendant as a truck driver at Defendant's Hermiston plant. Plaintiff's first day at work was February 12, 1991. As part of Plaintiff's introduction to Defendant's workplace, Plaintiff was provided with a copy of Defendant's Driver Policy Statement (the "Statement"), which Plaintiff read and understood. The Statement provided that "all employment is at the discretion of the company, and employment may be terminated at any time by either the company or the employee with or without cause." The Statement set forth specific conduct which would serve as grounds for immediate termination including, in part: 1) insubordination to supervisors or guards or the use of abusive or profane language; 2) refusal to perform an assigned job or a reasonable amount of overtime; and 3) walking off the job or leaving company property without permission during working hours. The Statement also identified conduct which "may, at the Company's discretion, result in immediate termination of employment or other disciplinary actions; however, repeat violations will, at the company's discretion, usually result in immediate termination of employment." This conduct included excessive absenteeism which was defined in the following manner:

> Absenteeism: Unexcused absence will mean absence from the job without prior notice to and consent from the Company. (Calling in does not necessarily mean the absence will be excused. Consent of the appropriate supervisor or leadperson is required for an excused absence.) A doctor's statement does not necessarily classify an absence as excused if absenteeism has become chronic. Three unexcused absences within a 12–month period will be cause for discharge. Employees with a poor attendance record will not be considered for promotion even though otherwise qualified. Chronic absence (8 incidences) for any reason will be cause for discharge.

In addition, sexual harassment is listed as conduct which may result in termination at the discretion of Defendant. "Sexual Harassment is defined in the Statement as: "intimate physical contact, statements, soliciting, intimidating, or otherwise affecting an individual's work, teasing or joking com-

ments that have sexual connotation." The Statement further provides that "sexual harassment" will not be tolerated and that "all complaints will be thoroughly and impartially investigated."

Shortly after Plaintiff commenced her employment with Defendant, she requested assistance from Dean Dovey, who generally occupied the position of lead person on the night shift. The lead person was responsible for supervising the other drivers on that shift but was not considered "management." Mr. Dovey refused to assist Plaintiff stating that if Plaintiff couldn't do the job on her own, she didn't deserve to have it. Mr. Dovey called Plaintiff a "bitch" and stated that she was taking a job away from a man that could do the job and that Plaintiff belonged in the kitchen or the bedroom.

Plaintiff had another run-in with Mr. Dovey on August 10, 1991, in which Mr. Dovey called Plaintiff a "bitch" and told Plaintiff that she should leave the job. Plaintiff reported Mr. Dovey's conduct to management at this time. Mr. Dovey did not make any inappropriate or discriminatory comments in the presence of Plaintiff after Plaintiff reported him to management.

In February 1992, Andy Williams, Terminal Manager, wrote a memorandum to Plaintiff expressing his concern over her chronic absenteeism (the "Memo").[1] In the Memo, Mr. Williams indicated that Plaintiff had been absent from work 22 times from August 1991 to February 1992 and warned Plaintiff that continued absences could "endanger" her employment.

On April 20, 1992, Plaintiff filed a claim against Defendant with BOLI (the "BOLI Claim"). In the BOLI Claim, Plaintiff alleged that Defendant was discriminating against her on the basis of her sex. Defendant was given notice that Plaintiff had filed the BOLI Claim on or after May 4, 1992.

On June 3, 1992, Mr. Williams issued a "Critical Incident" report indicating that Plaintiff had been absent 45 times since she started her employment with Defendant (the

"Report"). The Report again cautioned Plaintiff that the absenteeism must stop, that the disciplinary measures outlined in the Statement would be used to correct the problem and that documentation would need to be provided if a medical problem existed. In addition, Mr. Williams advised Plaintiff that the Employee's Assistance Program was available to her if that would be helpful. Mr. Williams noted on the report that "Becky agreed to work with me on this problem." Plaintiff acknowledged that Defendant's concerns about her frequent absences were legitimate.

Plaintiff was eventually terminated on August 27, 1992. The reason given for her discharge on the "Notice of Action" (the "Notice") was three unexcused absences within a twelve-month period. The Notice indicated that the three unexcused absences occurred on June 11, 1992, June 12, 1992 and August 22, 1992. Plaintiff had been absent from work at least twice in August 1992 prior to her termination and, on at least one of those occasions, had failed to call in to advise Defendant that she would not be at work that day. The decision to terminate Plaintiff was made by Terry Threlfall, the Northwest Regional Transportation Manager, in consultation with Edwin Brandt, the General Manager of Transportation Operations and Stanley Johnson, the Administrative Manager or Human Resources.

### Preliminary Procedural Matter

Defendant's summary judgment motion is supported, in large part, by Plaintiff's own deposition testimony. Plaintiff's opposition to the summary judgment is supported by an affidavit signed by Plaintiff on May 25, 1994 ("Plaintiff's Affidavit"). Plaintiff's Affidavit contains information that directly contradicts a number of statements made by Plaintiff in her deposition. Defendant has requested that the court strike Plaintiff's Affidavit as inconsistent, cumulative and confusing.

The Ninth Circuit, as well as the majority of the federal circuit courts, have long held that a party cannot effectively oppose a sum-

---

1. In her deposition, Plaintiff represented more than once that she received this memorandum in February 1992. In her affidavit, Plaintiff repre-

sents that she did not receive a copy of the memorandum until May 29, 1992, after Plaintiff filed her BOLI claim.

mary judgment by contradicting her own deposition testimony with a newly prepared affidavit which creates genuine issues of material fact. *Kennedy v. Allied Mutual Insurance Co.,* 952 F.2d 262 (9th Cir.1991). The court reasoned that:

> [i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Id.* at 266 (quoting *Foster v. Arcata Associates, Inc.,* 772 F.2d 1453, 1462 (9th Cir.1985).

■■■ The court denies Defendant's motion to strike Plaintiff's Affidavit as cumulative and confusing. The duplicate information, while not necessarily helpful, is not confusing to the court and will not prejudice Defendant in any way. The court grants Defendant's motion to strike the portions of Plaintiff's Affidavit which directly conflict with her deposition testimony and will not consider that evidence in this Findings and Recommendation.

Defendant also moves to strike the affidavits of two former employees of Defendant as well as Plaintiff's exhibits A, C and E. The court has reviewed these documents and has found them to be fairly benign with regard to the outcome of this motion. Consequently, in light of the court's ruling and the fact that the documents complained about are not outcome determinative, the court denies Defendant's motion to strike these documents as well.

### Legal Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. A

scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id.* at 631. The court must view the inferences drawn from the facts in the light most favorable to the nonmoving party. *Id.* at 630–631. However, when the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than would otherwise be required. *California Architectural Bldg. Products v. Franciscan Ceramics,* 818 F.2d 1466, 1470 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). The Ninth Circuit has stated, "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id.* at 1468.

### Discussion

### First Claim for Relief—Unlawful Employment Practices

In her First Claim for Relief, Plaintiff alleges that:

> Plaintiff has been the subject of unlawful employment practices on the part of the defendant in that she was: a) Discharged from her position because of her sex; b) Discriminated against because of her sex in the basis of terms, conditions, and privileges of her employment by the defendant; and c) Because of her complaint to the Oregon Bureau of Labor and Industries concerning Defendant's employment practices, Defendant discriminated against her on the basis of terms, conditions, and privileges of employment and terminated her.

In support of this claim, Plaintiff alleges that:

> Beginning in early 1992, and continuing until her termination, Plaintiff Montgom-

ery suffered verbal abuse and sexual harassment, including, but not limited to, having Defendant, or whoever was in control of the defendant, refer to her as "the bitch," comments regarding how she was taking a man's job away from him and that her place was at home in the kitchen or bedroom. Statements were made by defendant's employees to Plaintiff that females should not be truck drivers. Plaintiff Montgomery was given less work than male drivers with less seniority. Plaintiff Montgomery's absences from work were often categorized as "unexcused" in circumstances in which such absences on the part of male drivers were not so categorized.

## Sex Discrimination

The Oregon courts have generally adopted federal law with regard to federal statutory discrimination claims and have applied it to actions filed under O.R.S. Chapter 659. The only exception is that the Oregon courts have rejected the three-part shifting burden created by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *City of Portland v. Bureau of Labor and Industries*, 298 Or. 104, 690 P.2d 475 (1984); *Callan v. Confederation of Oregon School Administrators*, 79 Or.App. 73, 717 P.2d 1252 (1986). The Oregon courts agree with the "objective of enabling the plaintiff to reach the factfinder without producing the direct evidence concerning discrimination that the employer rather than the plaintiff is better able to produce" voiced by the United States Supreme Court in *McDonnell*. *Id.* at 77, n. 3, 717 P.2d 1252. However, the Oregon courts have held "that the burden does not shift from the plaintiff in Oregon discrimination actions in which the issue is simply whether the plaintiff's allegation or the employer's denial of discrimination is correct." *Id.* at 77, 717 P.2d 1252.

■ In order to survive this motion for summary judgment, Plaintiff must establish a *prima facie* case of sex discrimination under O.R.S. Chapter 659 by showing that Defendant engaged in adverse employment actions under circumstances which give rise to an inference of discrimination based on Plaintiff's sex. *Henderson v. Jantzen*, 79 Or.App. 654, 719 P.2d 1322 (1986) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Plaintiff is not required to provide direct evidence of such discrimination, only sufficient evidence to give rise to an inference of unlawful discrimination. *Id.*

Plaintiff alleges that she was treated less favorably than male drivers in that she was given less work than male drivers with less seniority and she was assessed "unexcused absences" in situations where male drivers absences were found to be excused. In addition Plaintiff asserts that she was subjected to ongoing offensive remarks and treatment based on her gender.

## Work Assignments

Plaintiff explained that on the morning of May 27, 1992, she was advised by Quentin Blinn that there were only 14 loads to drive that day and that the loads were going to be assigned to drivers with more seniority than Plaintiff. Plaintiff dropped by the work site on the evening of May 27, 1992, to check her work schedule and discovered that Max Ellis, a male driver with less seniority than Plaintiff, had worked that morning.[2] While Plaintiff indicated that there were "quite a few times" when a male driver with less seniority got work and she didn't, she was unable to remember any other dates, drivers or circumstances.[3] Plaintiff also testified that there were times when she would work when male drivers with more seniority were not called in.

## Unexcused Absences

With regard to the unexcused absences, Plaintiff explained that Bill Mootry asked for an excused absence because his uncle had

2. When asked by Plaintiff why she hadn't been called to work, Mr. Blinn indicated that he attempted to contact Plaintiff by telephone. Plaintiff represents that someone was at home all day on May 27, 1992.

3. Plaintiff did refer to a male driver that had worked in July, 1992, but Plaintiff had not requested that she be called to work during that period and she did not indicate whether the male driver had less seniority.

died. Plaintiff complained that Mr. Mootry's "uncles were always dying." Plaintiff did not know whether Mr. Mootry's uncle had actually died nor did she explain when and under what circumstances she was denied an excused absence for a death of a relative. Furthermore, Plaintiff did not have any information about Mr. Mootry's attendance record.

### Offensive Gender–Based Treatment

Plaintiff also alleges in her complaint that she was subjected to offensive gender-based comments from other employees from January 1992[4] until the date she was terminated. In her deposition, Plaintiff testified that the only individual who made these comments to her was Dean Dovey, the lead person on the night shift and Plaintiff's supervisor when she worked that shift. Plaintiff was only able to remember two specific incidents, which are described below,[5] but testified that Mr. Dover regularly called Plaintiff a "bitch" when she asked Mr. Dover for assistance. In addition, Plaintiff listed a number of co-workers who told her that they had heard Dovey refer to Plaintiff as a "bitch" in Plaintiff's absence.

In February, 1991, a request by Plaintiff for assistance from Mr. Dovey was refused.[6] Mr. Dovey called Plaintiff a "bitch" and told her that she was taking a job away from a man that could do the job and that she belonged in the kitchen or the bedroom. The second incident occurred on August 10, 1991, when Plaintiff and Dovey disagreed about the need for Plaintiff to pick up another load of clay. Mr. Dovey again referred to Plaintiff as a "bitch" and told her that women shouldn't be truck drivers and that she should leave. In August 1991, Plaintiff complained to Quentin Blinn and Andy Williams about Mr. Dovey's behavior and testified that

after she made her complaint, Mr. Dovey did not engage in anymore offensive behavior in her presence.

In addition, Plaintiff felt that Quentin Blinn treated her poorly by ignoring her and refusing to answer questions. Plaintiff felt that he was acting this way because he didn't like Plaintiff as a person and didn't want her "out there." Plaintiff was told that Mr. Blinn didn't like her by a number of co-workers but no one, including Plaintiff, ever indicated that Mr. Blinn's dislike of Plaintiff had anything to do with her being a woman. In fact, Plaintiff testified that, in her honest opinion, Blinn's actions were not the result of Plaintiff's sex. Plaintiff testified at her deposition that Andy Williams never did anything that she thought was inappropriate in any way.

Plaintiff also offered statements of David Gallagher and Laurence Dahlin, both ex-employees of Defendant, that Mr. Dovey was rude to Plaintiff and called her a "bitch." In addition, Mr. Gallagher represented that Roger Patton was rude, mean and disrespectful to Plaintiff and was short with Plaintiff when giving her assignments. Laurence Dahlin indicated that Andy Williams had once told him that Plaintiff "was a 'fucking cunt' and that Simplot did not need another 'fucking cunt on PMS'."

In her opposition to this motion for summary judgment, Plaintiff argues that the fact that she was "unjustifiably suspended" from her job in three instances for insubordination supports her argument of sex discrimination.[7] The only evidence that Plaintiff has that links any of these insubordination reports to her sex is that Dean Dovey referred to Plaintiff as a "bitch" on the day Plaintiff and Mr. Dovey had a disagreement about whether Plaintiff was supposed to pick up

---

**4.** The majority of the offensive conduct described by Plaintiff occurred in 1991. The court will assume that the 1992 date in Plaintiff's complaint a typographical error and will consider all of the complained of conduct.

**5.** Interestingly, Plaintiff designated only two situations in which Mr. Dovey made these comments, both of which occurred in 1991, prior to the date alleged in Plaintiff's complaint.

**6.** Defendant asserts that Plaintiff is prevented from relying on this incident by the one year

statute of limitations set forth in O.R.S. 659.040(1). Plaintiff argues that Defendant engaged in a pattern of conduct and that acts which occurred prior to May 1991 may be considered as part of the pattern. Because the court finds that Mr. Dovey's entire course of conduct does not amount to discrimination, Defendant's statute of limitations argument is moot and need not be addressed.

**7.** In fact, Plaintiff was suspended on only two occasions.

another load of clay. Mr. Dovey wrote an insubordination report on the incident and Plaintiff was suspended for three days by Andy Williams.

Finally, Plaintiff was terminated from her employment with Defendant on August 27, 1992. The decision to terminate Plaintiff was made by Terry Threlfall, who was appointed as the Northwest Regional Transportation Manager in August 1992. Mr. Threlfall consulted with Edwin Brandt, the General Manager of Transportation Operations, and Stanley Johnson, the Administrative Manager of Human Resources with regard to Plaintiff's termination. The basis for Plaintiff's termination was her excessive absences and her failure to improve her attendance after two written warnings. Plaintiff failed to show up for work three times in August 1992 before she was terminated.

■ Based on the evidence before the court, it is clear that Plaintiff has failed to meet the low threshold of proof required to send her claims for sex discrimination under O.R.S. Chapter 659 to the factfinder. Even viewing the evidence in the light most favorable to Plaintiff, the court can not infer from the evidence presented that Plaintiff was discriminated against based on her gender, either in regard to her work assignments, the characterization of her absences or her termination.

■ At best, Plaintiff has established that Mr. Dovey disliked Plaintiff, at least in part because she was a woman working as a truck driver, and that he expressed such dislike in an offensive manner on two occasions in 1991. Stray remarks alone are not sufficient to establish discrimination, especially when the remarks are made by nonmanagement personnel. *Merrick v. Farmers Ins. Group,* 892 F.2d 1434 (9th Cir.1990). Furthermore, once management was notified of Dovey's actions, the offensive conduct stopped.

The only other evidence which would tend to establish an inference of discrimination is the statement Andy Williams made to Laurence Dahlin that Defendant did not need another "fucking cunt on PMS." Plaintiff testified that, in her opinion, Mr. Williams' behavior was appropriate at all times. In addition, Plaintiff offered evidence that Mr. Williams saved Plaintiff's job for her after her third insubordination report on June 4, 1992. Mr. Williams testified that all of Plaintiff's supervisors wanted her terminated and that Mr. Williams convinced them to give her another chance to succeed. Plaintiff was suspended for five days without pay instead of terminated at that time. Mr. Williams support of Plaintiff at this time lessens the effect of any inference the court may have made with regard to the statement that was made by Mr. Williams to Mr. Dahlin. Finally, the court finds it interesting, and somewhat enlightening, that the driver with the most seniority employed by Defendant at the Hermiston plant is a woman.

Plaintiff has failed to present sufficient evidence to establish her *prima facie* case for sex discrimination. In light of Plaintiff's failure, the court need not consider Defendant's stated nondiscriminatory reasons for Plaintiff's termination.

Retaliation Claim

■ Plaintiff also alleges that she was discriminated against in retaliation for her filing her BOLI Claim in April 1992. In order to prove a retaliation claim, Plaintiff must establish that she engaged in a protected activity, she suffered an adverse employment decision and there was a causal relationship between the protected activity and the adverse employment decision. *Ruggles v. California Polytechnic State University,* 797 F.2d 782, 785 (9th Cir.1986). Plaintiff has adequately established the first two elements. However, Plaintiff has failed to establish the necessary causal relationship between her BOLI Claim and Defendant's alleged wrongful behavior and termination.

■ Plaintiff testified that the only incident she feels was a direct result of her filing the BOLI Claim was the filing of a citizen's complaint by a driver for Defendant. Plaintiff was accused of running a car off the road into the ditch while driving up Three Mile. Plaintiff remembered a white car "whizzing passed me and there's this Mexican lady in the back flipping me off with both fingers." Plaintiff testified that she did not run anyone off the road and that she felt that the com-

plaint was made falsely and in retaliation for her BOLI Claim. Plaintiff also testified that Mr. Threlfall listened to her side of the story and that she was not disciplined as a result of the incident. This incident was not necessarily detrimental to Plaintiff. In addition, Plaintiff has failed to establish that it was caused by her BOLI Claim.

All of Plaintiff's other complaints existed prior to the filing of the BOLI Claim and, consequently, can not be inferred to be in retaliation for such filing. While Plaintiff's termination did occur after she filed her BOLI Claim, this fact alone is not sufficient evidence of retaliation to survive a motion for summary judgment. In addition, the time which elapsed between the filing of the BOLI Claim and Plaintiff's termination as well as Defendant's decision not to terminate Plaintiff on June 3, 1992, the date of her Critical Incident Report and meeting with Andy Williams for her excessive absences, or June 4, 1992, the date of her third Insubordination Report and subsequent five-day suspension without pay, both of which occurred after the BOLI Claim was filed, supports a finding that Plaintiff's termination was not in anyway related to her filing of the BOLI Claim.

Plaintiff has failed to establish a *prima facie* case of sex discrimination or retaliation. Defendant's motion for summary judgment on Plaintiff's First Claim for Relief for Unlawful Employment Practices should be granted.

**Second Claim for Relief—Intentional Infliction of Emotional Distress**

In her Second Claim for Relief, Plaintiff alleges Defendant's conduct was extreme and outrageous and that it caused Plaintiff severe emotional distress requiring medical treatment. Under Oregon law, a claim for intentional infliction of emotional distress exists only where the defendant intended to inflict severe emotional distress on the plaintiff, the defendant's acts were the cause of severe emotional distress, and the defendant's acts were an "extraordinary transgression of the bounds of socially tolerable conduct." *Madani v. Kendall Ford, Inc.,* 312 Or. 198, 203, 818 P.2d 930 (1991). It is the defendants' acts, rather than their mo-

tives, that must be outrageous. *Id.* at 204, 818 P.2d 930.

The conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Christofferson v. Church of Scientology,* 57 Or.App. 203, 211, 644 P.2d 577 (1982) (quoting Restatement (Second) on Torts, § 46, comment d (1965)). The employer-employee relationship is a relevant factor in determining whether conduct is outrageous. *Hall v. May Dept. Stores Co.,* 292 Or. 131, 137, 637 P.2d 126 (1981).

It is true that Plaintiff was found to be suffering from agitated depression in June 1992 and that her doctor recommended that she take a one-month leave of absence from her employment. However, the evidence shows that Plaintiff was suffering from this problem prior to the time she started her employment with Defendant and that Plaintiff was seen by a doctor for depression in March 1991.

In addition, while it may be true that the stress of Plaintiff's employment coupled with the investigation of the BOLI Claim caused Plaintiff's condition to deteriorate, the court can not find that Defendant's actions went beyond the bounds of social decency. Plaintiff complains that she was subject to constant abusive conduct during her employment with Defendant. However, she can only remember two specific incidents of such conduct, both of which occurred nearly one year prior to her medical leave. The fact that Plaintiff can not remember any additional incidents leads the court to believe that she did not suffer to any great degree as a result of the incidents and that such conduct was not sufficiently outrageous to support a claim for intentional infliction of emotional distress.

Plaintiff argues that the fact that she was terminated because of her sex or in retaliation for her filing her BOLI Claim "is an extraordinary transgression of the bounds of social toleration, especially in conjunction with its meritless and fabricated reason for termination that plaintiff had three unexcused absences." The court has found that Plaintiff has failed to present sufficient evi-

dence to create even an inference that she was terminated because of her sex or in retaliation for the BOLI Claim. In the absence of a showing of discrimination in her termination, Plaintiff's claim for intentional infliction of emotional distress based on her wrongful termination must fail. Defendant's motion for summary judgment on Plaintiff's Second Claim for Relief should be granted.

### Third Claim for Relief—Wrongful Discharge

Plaintiff alleges that Defendant wrongfully terminated her in retaliation for filing her BOLI Claim. The court has already found that Plaintiff has failed to establish even an inference that Plaintiff's termination was in retaliation for her BOLI Claim. Consequently, Defendant should be granted summary judgment with regard to Plaintiff's Third Claim for Relief as well.

### Conclusion

Defendant's motion (20) for summary judgment should be GRANTED. Defendant's motion (35) to strike is GRANTED in part and DENIED in part.

DATED this 21st day of June, 1994.